UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SUET F. WONG,<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>COUNTRYWIDE HOME LOANS, INC., et al.,<br><br>　　　　　　　　　　　Defendant(s). | Case No. 2:15-CV-1398 JCM (VCF)<br><br>ORDER |

　　Presently before the court is defendants' Countrywide Home Loans, Inc. ("Countrywide"), Bank of America, N.A. ("BANA"), and Mortgage Electronic Registration Systems, Inc. ("MERS") motion to dismiss *pro se* plaintiff Suet F. Wong's complaint (Doc. #8). Defendants BSI Financial Services, Inc. ("BSI") and National Default Servicing Corporation were joined to the motion to dismiss. (Docs. ##10, 14). Plaintiff also filed a motion for default judgment. (Doc. #16).

**I.　Background**

　　On or about October 24, 2003, plaintiff executed a promissory note in favor of Countrywide Home Loans, Inc. in the amount of $106,000.00. (Docs. ##1 at 5; 2-1 at 33). The note was secured by a deed of trust on the real property located at 5402 Night Swim Lane, Las Vegas, Nevada, 89113, with an assessor's parcel number of 163-28-712-02. (Doc. #2-1 at 10). The deed of trust was executed October 24, 2014, and it was assigned from Countrywide, the original lender, to MERS on May 16, 2011. *Id.* The trustee is CTC Real Estate Services. *Id.*

　　Plaintiff alleges seven claims for relief. Count I appears to claim a procedural deficiency in the securitization process. (Doc. #1 at 10). Counts II and III attack securitization and allege a "splitting" of the note and deed of trust. (Doc. #1 at 12, 13-40). Counts IV and V attack the "robo-

**James C. Mahan**
**U.S. District Judge**

signing" that occurred in the corporate assignment of the deed of trust. (Doc. #1 at 40-41). Count VI asserts a violation of the Real Estate Settlement Procedures Act ("RESPA") against BSI. (Doc. #1 at 41-42). Lastly, count VII alleges a discrimination claim against the Clark County Recorder, Debbie Conway.

## II.     Legal Standards

### a. Motion to dismiss

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678-79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

James C. Mahan
U.S. District Judge

- 2 -

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

**III.    Discussion**

As an initial matter, the court acknowledges that the complaint was filed *pro se* and is therefore held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted). However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

    a.  Motion to dismiss

        i.  Standing to bring suit (counts I, IV, and V)

Plaintiff's complaint seeks to void transfer/assignment of the promissory note and/or the deed of trust that secures the property by attacking the securitization process of the loan. (Doc. #1). Plaintiff alleges in count I that certain requirements may not have been met in the pooling and servicing agreement ("PSA") regarding indorsement, assignment, or transfer of the notes and deeds of trust into the respective trust. (Doc. # 1 at 11); (*see also* Doc. #8 at 3). Plaintiff in counts IV and V also attacks the filing and recording of the corporate assignment of the deed of trust due to defendants engaging in "robo-signing." (Doc. #1 at 40-41). Defendants argue that plaintiff lacks standing to challenge the securitization process and assignments of her mortgage because she is not a party to the trust agreement. (Doc. #8 at 3-4). The court agrees.

The "Ninth Circuit district courts have come to different conclusions when analyzing plaintiff's right to challenge the securitization process as [p]laintiff [has] here." *Baldoza v. Bank of America*,

*N.A.*, 2013 WL 978268, at *10 (N.D. Cal. Mar. 12, 2013) [(quoting *Johnson v. HSBC Bank USA, N.A.,* 2012 WL 928433, at *2 (S.D. Cal. Mar. 19, 2012)) (citing *Schafer v. CitiMortgage, Inc.,* 2011 WL 2437267 (C.D. Cal. June 15, 2011) (denying defendants' motion to dismiss declaratory relief claim, which was based on alleged improper transfer due to alleged fraud in signing of documents); *Vogan v. Wells Fargo Bank, N.A.,* 2011 WL 5826016, at *7 (E.D. Cal. Nov. 17, 2011); *Armeni v. America's Wholesale Lender,* 2012 WL 603242, at *2 (C.D. Cal. Feb. 24, 2012); *Junger v. Bank of America, N.A.*, 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012)].

The *Armeni* court, for example, found that the plaintiff "lack[ed] standing to challenge the process by which his mortgage was (or was not) securitized because he [wa]s not a party to the PSA [pooling and service agreement]." *Armeni*, at *3 (citing *In re Correia,* 452 B.R. 319, 324 (1st Cir. 2011) (holding that debtors as, non-parties to a PSA, lack standing to challenge a mortgage assignment based on non-compliance with the agreement.)). Similarly, the court in *Bascos* held that a plaintiff had no standing to challenge the validity of the securitization of the loan as he [wa]s not an investor of the loan trust." *Bascos v. Fed. Home Loan Morg. Corp.*, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011).

*Baldoza* v. *Bank of America, N.A.* recently analyzed these various cases and concluded that "[t]he majority position is that plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they were parties to the PSA or third party beneficiaries of the PSA." *Baldoza* at *10. The *Baldoza* court adopted this majority approach; this court follows the same in the present case.

Plaintiff, as homeowner to the transaction, is the borrower/mortgagor in the loan process. Thus, as the defendants correctly assert, plaintiff lacks standing to sue here because she "is not a party to the securitization agreement nor an investor [or third party beneficiary] in the securitized trust." (Doc. #8 at 4). Defendants point out that plaintiff's "entire [c]omplaint is based on allegations that defendants did not comply with the securitization procedures set forth in the pooling and service agreement." (Doc. #8 at 4) (internal citation omitted). The court agrees with this assessment. Therefore, plaintiff in the present case lacks standing to challenge the securitization process, and the court grants dismissal of counts I, IV, and V with prejudice.

          ii.       Splitting the note and deed of trust (counts II and III)

Plaintiff alleges that the "defendants' omissions, acts, and actions separated the deed of trust from the note." (Doc. #1 at 13). In other words, plaintiff argues that defendants "lacked authority to foreclose" on the home due to the promissory note being "split" from the deed of trust. *Edelstein v. Bank of N.Y. Mellon,* 286 P.3d 249, 260, 128 Nev. Adv. Op. 48 (Sept. 27, 2012). The Ninth Circuit has held that while the note is able to be split, it can be reunified and that "the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011) (citing Landmark Nat'l Bank, 216 P.3d 158, 167 (2009). Similarly, the Nevada Supreme Court in *Edelstein* analyzed the traditional rule and restatement approach on this issue of "splitting of the note," and the court rejected the argument that that the use of MERS irreparably splits the note and the deed of trust. *See id.* at 256-259. Furthermore, even if a split occurred, "any split is cured when the promissory note and deed of trust are reunified." *Id.* at 252.

Here, any splitting of the note which may have occurred would similarly be curable upon reunification. Thus, plaintiff's argument lacks merit, and the court grants dismissal of counts II and III with prejudice.

          iii.      Remaining claims (counts VI and VII)

               1.   Real Estate Settlement Procedures Act ("RESPA") (count VI)

Plaintiff alleges that BSI, her loan servicer, did not send a required letter acknowledging receipt of her inquiry letter within the five (5) day requirement under RESPA. (Doc #1 at 41-42). Plaintiff also alleges that BSI "did not respond within the thirty (30) days as per the time frame mandated by Congress . . . ." (Doc. #1 at 42). BSI mailed a response to plaintiff forty-three (43) days after receiving plaintiff's inquiry letter. (Doc. #1 at 41).

"RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the *servicing* of their loans." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012) (citing 12 U.S.C. § 2605(e)) (emphasis added). "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provider a written

response acknowledging receipt of the correspondence within 5 days . . . ." 12 U.S.C. § 2605(e)(1)(A).

A qualified written request ("QWR") is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-
>
> i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* at (e)(1)(B).

The servicer shall respond to a RESPA QWR "[n]ot later than 30 days" after receipt of it. *Id.* at (e)(2). After conducting an investigation into the inquiry, the servicer must provide the borrower with a "written explanation or clarification" including either "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer . . . ," or, alternatively, "a written explanation or clarification that includes information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer[.]" *Id.* at (e)(2)(B)(i), (e)(2)(C)(i). Accompanying either of these routes of response, the servicer must also provide sufficient contact information of the "servicer who can provide assistance to the borrower[.]" *Id.* at (e)(2)(B)(ii), (e)(2)(C)(ii).

It is important to note that a QWR must inquire about "information *relating to the servicing* of [the] loan[,]" 12 U.S.C. § 2605(e) (emphasis added), and not about the validity of transfer, assignment, or indorsement of such loan, as plaintiff appears to be arguing here. In her complaint, plaintiff references the inquiry letter sent and the answer received 43 days after the servicer's receipt of her inquiry. (Doc. #1 at 41-42). The underlying query in plaintiff's sent letter appears to be aimed at challenging the validity of the loan and also the corporate assignment or chain of transfer of the loan. The letter itself states that "I have no choice but to dispute the validity of my lawful ownership, funding, entitlement right, and the current debt you allege that I owe. It is my belief at this time that this is not a valid debt . . . ." (Doc. #2-1 at 17).

James C. Mahan
U.S. District Judge

- 6 -

Plaintiff's letter demands various clarifications regarding information and documentation evidence 1) proving that BSI is "the holder of the original uncertificated or certificate security [*sic.*] . . ."; 2) including "records that definitively show a chain of transfer"; 3) 188 interrogatory-like questions that were requested to be answered in "full and immediate disclosure"; and 4) rebuttal evidence to validate Exhibit A, which, based on the *pro se* plaintiff's filings, is the deed of trust itself. (S*ee* Doc. #2-1 at 32-48).

The Ninth Circuit has held that "letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under §2605(e)." *Medrano,* 704 F.3d 661, 667 (9th Cir. 2012). The plaintiff in the present case alleges that BSI failed to comply with requirements of the 5-day acknowledgement of receipt of the QWR and the 30-day response to her inquiry letter under RESPA, 12 U.S.C. § 2605(e). When interpreting the statute, the Ninth Circuit clearly states that the inquiry must pertain to the *servicing* of a loan and not the validity of the loan itself. *See id.* at 667-668 (discussing how "RESPA defines the term servicing to encompass only receiving any scheduled period any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments.") (internal quotations omitted)).

This court finds that the initial inquiry letter sent by borrower does not constitute a qualified written request under 12 U.S.C. § 2605(e) because it did not pertain to "servicing." Thus, there was no obligation under RESPA to respond—fully or partially—despite BSI taking it upon themselves to partially respond. *See Medrano,* 702 F.3d at 667 (holding that a letter challenging validity of a loan or its terms did not constitute a QWR because "[t]he statute . . . distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other [hand]. That distinction makes sense because only servicers of loans are subject to §2605(e)'s duty to respond— and they [the servicers] are unlikely to have information regarding those loans' originations.") (s*ee also* Doc. #2-1 at 14-15 (BSI's partial response)).

Even if the letter constituted a QWR, the request is unduly broad and burdensome on the servicer. Thus, there was no obligation to comply with the inquiry letter. Other federal district

James C. Mahan
U.S. District Judge

- 7 -

1 courts have found that servicers need not respond to unreasonable requests for information unless
2 the plaintiff supports the claim with specific discrepancies or errors in the loan's servicing. *See,*
3 *e.g., Derusseau v. Bank of Am., N.A.,* 2011 WL 5975821, *4 (S.D. Cal. Nov. 29, 2011) (discussing
4 how an overbroad request for "effectively . . . anything that relates to her loan, from its inception
5 . . . ." places no obligation on the loan servicer to respond); *Armeni v. America's Wholesale Lender,*
6 2012 WL 603242, at *2 (C.D. Cal. Feb. 24, 2012) (holding that "[u]nder RESPA, a servicer need
7 not respond to an unreasonable request for information unless plaintiff justifies his or her belief
8 that the account is in error."); *Bhatti v. Guild Mortg. Co.,* 2011 WL 6300229, *7 (W.D. Wash.
9 Dec. 16, 2011) (similarly holding that a demand for "anything and everything that relates to their
10 loan, from its inception, . . . do[es] not assist . . . [the servicer] in identifying and investigating any
11 purported discrepancies *with the servicing of their loan*. Such broad requests for information and
12 documentation related generally to plaintiff's loan are not covered by section 2605 of Title 12
13 [RESPA].") (emphasis added)).
14 In the present case, plaintiff has not provided a specific enough query to allow the servicer to
15 compile requested information regarding deficiencies or other error, and, therefore, the servicer
16 was not obligated to respond to this inquiry letter. Other jurisdictions have similarly held that if a
17 QWR requests "a complete life of loan transactional history" or "anything and everything that
18 relates to their loan, from its inception[,]" then the request is overly broad and burdensome on the
19 servicer and, thus, does not require response. *Derusseau* at *5; *Bhatti* at *7
20 The query by plaintiff in the present case requested broad information and/or documentation
21 regarding the inception of the loan, chain of transfer, and verification of the loan's validity. Thus,
22 the court finds that the RESPA claim under count VI should be dismissed with prejudice.
23     2.    Discrimination claim against Clark County Recorder (Count VII)
24 This claim is moot. The Clark County Recorder, Debbie Conway, was dismissed from this case
25 without prejudice after the *pro se* plaintiff failed to provide service of process for this party. (Doc.
26 # 28). Thus, count VII is dismissed without prejudice.
27 . . .
28 . . .

James C. Mahan
U.S. District Judge

- 8 -

     b.  *Default judgment*

Plaintiff's request for default judgment is not appropriate in this case. Under Rule 55, entering a default is appropriate only "when a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* . . ." Fed. R. C. P. 55(a) (emphasis added). Here, defendants' motion to dismiss was an appropriate response to defend against an unfavorable judgment. (Doc. #8). Thus, default judgment is not appropriate because defendants did in fact "answer *or otherwise respond to the complaint* . . . ." *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 840 (S.D. Ill. 2006) (emphasis added).

## IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss (doc. #8) be, and the same hereby is, GRANTED. Plaintiff's complaint is dismissed consistent with the foregoing.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that *pro se* plaintiff Suet F. Wong's motion for default judgment (doc. #16) be, and the same hereby is, DENIED.

The clerk is instructed to close the case.

DATED February 23, 2016.

                                                              _____

                                                              UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**